**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| C.S. by her mother and next friend, BECKY SPAW, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1:20-cv-00741 |
| STEPPING STONE SCHOOL, | § § § | |
| Defendant. | § | **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, C.S., through undersigned counsel, files suit against Stepping Stone School, and alleges as follows:

**PRELIMINARY STATEMENT**

1. C.S. ("Plaintiff") is a pre-teen who was enrolled in an after-school program at Stepping Stone School ("Defendant" or "SSS"). She is a typical pre-teen, and loves superheroes and the TV show "Supergirl." She enjoys dancing, singing, and doing gymnastics and adores her family, her teachers, and her classmates.

2. C.S. also has Down Syndrome. Among the superpowers her Down Syndrome gifts her is the ability to make friends openly, to embrace everyone, and to love with her whole heart. Down Syndrome also means C.S. needs extra help sometimes, including assistance with toileting.

3. C.S. attended an after-school care program at the Stepping Stone School in Leander, Texas. She loved attending the SSS program and had the opportunity to dance, giggle, and socialize with peers without disabilities who were her same age. SSS provided assistance with toileting for C.S. as it does for other students without disabilities. However, when C.S. started her period, Stepping Stone School expelled her, discriminating both on the basis of disability and sex.

1

4. Defendant's actions violated Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, Title IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681, and Chapter 121 of the Texas Human Resources Code, § 121.001, *et seq.*.

5. Plaintiff seeks declaratory and injunctive relief, compensatory damages, and attorneys' fees, and costs.

## THE PARTIES

6. Plaintiff C.S. is 11 years old and lives with her mother and her two older brothers.

7. Upon information and belief, Defendant, Stepping Stone School ("SSS" or "Defendant"), is a Texas entity headquartered at 1910 Justin Lane, Austin, Texas 78757 and is licensed through the State of Texas as a child care provider for infants, toddlers, and school aged children.

8. SSS is funded in part through the Child Care and Development Fund administered by the United States Department of Health and Human Services and authorized through the Child Care and Development Block Grant Act. Therefore, SSS is a recipient of federal financial assistance.

## JURISDICTION

9. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b), as Defendant is located in the Western District and all of the acts and/or omissions alleged herein occurred in this judicial district

**FACTUAL ALLEGATIONS**

11. C.S. is the much-loved little sister of three older brothers and three older sisters. She is eleven – outgoing, open, loving, and funny. She adores her family. She adores her school friends. She loves to dance, spend time on the phone, and listening to music.

12. C.S. lives with her mother and two of her big brothers. Her father died when she was three years old.

13. When she was younger, C.S. attended SSS in College Station for approximately two years. She had an incredibly positive experience before her family moved.

14. In September 2018, C.S. re-enrolled in SSS located at 225 Block House Drive in Leander, Texas. C.S. thrived in the SSS afterschool program and was loved by her teachers and classmates. What C.S. cherished most about her time at SSS was the opportunity to socialize with others. Coming from a house with only older siblings, C.S. loved and needed the socialization she got at SSS.

15. C.S. has Down Syndrome. A key goal for her is independence. Opportunities to practice independence are especially critical in her development. She loves to learn new things but also learns more slowly than others. She has challenges with communication. For example, she struggles with trying to say too much at once, finding the right words, and putting sentences together. In school, C.S. receives special education services, as well as occupational and speech therapy.

16. C.S. was diagnosed with having an imperforate anus at birth. When she was just days old, she began having surgeries and more recently had rectal sclerotherapy to help her with bowel control. C.S. is not able to control her bowels.

17. Because of C.S.'s disabilities, she requires assistance with diapering. She wears pull-ups, but needs assistance with taking them off if she has had a bowel movement because her coordination is not adequate to take them off independently. She also needs assistance with cleaning herself. Once she is clean, she can put on a new pair of pull-ups, dress herself, and wash her hands independently.

18. As a participant in SSS's after school program, the only accommodation C.S. needed was assistance in removing her diaper and cleaning herself. SSS provides this assistance including diapering and toileting assistance to children without disabilities.

19. Other than assistance with diapering, C.S. was able to independently participate in the school's programs.

20. At SSS, C.S. wore a "potty watch" that reminded her to go to the younger classroom for assistance with diapering. At other times, she was changed by a staff member at the front desk. After she was changed, she would return to her regular classroom. Occasionally, there were days when C.S. was not properly changed and her mother would arrive to find her soiled. C.S.'s mother worked hard to make sure SSS had a plan in place to accommodate C.S. because the program was so important to C.S. and her development.

21. In September 2019, C.S. started her monthly period for the first time. C.S.'s mother let the staff at the school know that C.S. had started her monthly cycle so they would be aware of it. Nothing needed to change in terms of what the staff needed to do to assist C.S. and C.S.'s mom did not ask them to do anything differently. The process for changing her diaper would remain the exact same.

22. C.S. continued to only need pull-ups. Her first menstrual period occurred without incident. On December 4 2019, C.S.'s mom emailed the school to let the school know C.S. had started her monthly cycle again.

23. Upon information and belief, this was the first time the principal became aware that Cadie had started menstruating. It was that afternoon that SSS told C.S.'s mom that C.S. was no longer welcome at SSS.

24. SSS told C.S.'s mother that C.S. could no longer attend because of a "privacy need." The school told her she needed to be gone from the program in two days.

25. C.S.'s mother was shocked and sad about this very abrupt decision. She emailed the school asking for an explanation and also called and left a voicemail for the Principal, Christina, but the school did not respond to her outreach.

26. C.S. was crushed not to be able to attend SSS. She was confused and heartbroken to lose her friends and her teachers so suddenly.

27. Disability Rights Texas ("DRTx") wrote to SSS's Executive Director, Rhonda Paver, on behalf of C.S.

28. In a letter dated February 15, 2020, DRTx asked SSS to reconsider its exclusion of C.S. DRTx advised SSS that its position was that SSS's refusal to accommodate C.S. and its decision to disenroll C.S. was discrimination in violation of federal and state law.

29. On March 13, 2020, Susan Watson the Vice President and Director of Operations for SSS responded by letter to DRTx. In her response letter, Watson admitted that SSS had kicked C.S. out of its program because of the "diapering care [C.S.] now requires."

30. C.S. lost much as the result of being kicked out of SSS. While her mother worked, family kept her in the short term but once the coronavirus pandemic began, she was stuck home

with no socialization while her mother had to work from home. Were she not a young woman with Down Syndrome, she could have continued attending SSS which remains open and has expanded its offerings for her age group to full day summer school programming while schools are closed.

31. C.S. asks often when she can go back to "my school." She misses her friends and her teachers and the time with other kids her age.

32. While her peers without disabilities are now enjoying a summer with their friends at SSS, C.S. is isolated at home.

33. As the result of SSS's actions, C.S. has suffered and continues to suffer. She wants very much to return to SSS, to her friends and her teachers.

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT OF 1973

34. Plaintiff, C.S., repeats and re-alleges the foregoing paragraphs in support of her claims.

35. Plaintiff is a qualified individual with a disability under section 504 of the Rehabilitation Act, 29 U.S.C. § 794 because she has Down Syndrome and has bowel issues secondary to being born with an imperforate anus and is substantially limited in the major life activities of learning, communicating and toileting. She was and is the appropriate age to be enrolled at SSS.

36. Defendant is a recipient of federal financial assistance because has taken and continues to take federal funds from, *inter alia*, the United States Department of Health and Human Services.

37. Defendant discriminated against the Plaintiff solely on the basis of her disability by refusing accommodation and disenrolling her from the educational programming it offers to other non-disabled children. In so doing, Defendant denied and continues to deny C.S. meaningful

access and an equal opportunity to participate in and benefit from Defendant's programs and activities in violation of section 504 of the Rehabilitation Act.

38.     Defendant's exclusion of C.S. was intentional.

39.     C.S. was injured as the result of Defendant's conduct. In excluding C.S. from its programs, C.S. experienced sadness, confusion, hurt, humiliation, and isolation on the basis of disability.

40.     C.S. remains eligible to attend SSS but for the Defendant's discriminatory refusal to accommodate and exclusion.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

41.     Plaintiff, C.S., repeats and re-alleges the foregoing paragraphs in support of this claim.

42.     Title III of the ADA prohibits discrimination based on disability by businesses that serve the public. 42 U.S.C. 12182(a); s*ee also* 42 U.S.C. 12181(7) (defining "public accommodation").

43.     Defendant is a place of public accommodation because it is, *inter alia*, a "place of education," and a "place of recreation". 42 U.S.C. § 12181.

44.     C.S. is an individual with a disability because she is substantially limited in the major life activities of learning, communicating, and toileting.

45.     C.S. was qualified to attend SSS because she was the same age as other children served by SSS.

46.     Defendant excluded C.S. from its programs and activities and denied her the opportunity to participate in violation of 42 U.S.C. 12182(b)(1)(A)(i) ("It shall be discriminatory to subject an individual… on the basis of a disability or disabilities… to a denial of the opportunity

7

of the individual… to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.").

47. Defendant must "make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the [entity] can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." 28 C.F.R. § 36.302(a); *see also* 42 U.S.C. § 12182(b)(2)(A) (an entity must offer reasonable modifications, accommodations, and auxiliary aids and services).

48. Defendant provides diapering and toileting assistance to non-disabled children and must therefore do the same as an accommodation for C.S.

49. Defendant violated the Title III of the ADA by excluding C.S., by refusing accommodation, and instead requiring her to bring an aide paid for by her mother in order to participate.

50. C.S. would very much like to return to SSS, but remains unable to do so because of Defendant's discriminatory policies and practices

## COUNT III
## TITLE IX

51. Plaintiff, C.S., repeats and re-alleges the foregoing paragraphs in support of this claim.

52. C.S. is a young woman who started menstruating in September of 2019.

53. Defendant is a recipient of federal financial assistance and an educational institution as defined by Title IX.

54. Title IX provides that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.S.C. § 1681.

55. Defendant barred C.S.'s participation in its program when she began menstruating and continues to bar C.S. participation in its programs.

56. C.S. suffered and continues to suffer harm as the result of Defendant's actions including isolation, exclusion, loneliness, and sadness.

## COUNT IV
## VIOLATION OF CHAPTER 121 OF THE TEXAS HUMAN RESOURCES CODE

57. Plaintiff re-alleges the foregoing paragraphs of this Complaint and incorporate their contents into this Cause of Action by reference.

58. By statute, it is the policy of the State of Texas "to encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code § 121.001.

59. The term "public facilities" includes "a building to which the general public is invited…and any other place of public accommodation…to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited." Tex. Hum. Res. Code § 121.00(1)(5). The Defendant falls within the Code's definition of "public facility."

60. Plaintiff is an individual with a disability within the Texas Human Resources Code in that she is a child with Down Syndrome and bowel issues secondary to being born with an imperforate anus. *Id.* § 121.002(4).

9

61.     Based on its conduct described above, Defendant has violated Chapter 121 in the following ways:

62.     Denying Plaintiff the full use and enjoyment of facilities offered to those without disabilities, in violation of § 121.003(a).

63.     Failing to make reasonable accommodations in their policies, practices, and procedures so that the Plaintiff would have necessary accommodations, and thus be able to have full use or access to Defendant's services in violation of § 121.003(d)(2).

64.     A person, firm, association, corporation, or other organization, or the agent of a person, firm, association, corporation, or other organization who violates § 121.003 is deemed to have deprived a person with a disability of his civil liberties. *Id.* § 121.004(b).

65.     A person with a disability, deprived of his civil liberties, may maintain a cause of action for damages in a court of competent jurisdiction. *Id.*

66.     Therefore, Defendant discriminated against Plaintiff on the basis of her disabilities and deprived her of their civil liberty, and entitled Plaintiff to recover compensatory damages.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action for all claims so triable.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a. Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act of 1973, Title III of the Americans with Disabilities Act, Title IX of the Civil Rights Act, and Chapter 121 of the Texas Human Resources Code;

b. Order Defendant to re-enroll C.S. and provide the necessary accommodation;

c.      Enjoin Defendant from any policy, procedure, or practice that will deny Plaintiff meaningful access to and an equal opportunity to participate in and benefit from Defendant's services or that will exclude Plaintiff from its programs or services;

d.      Order Defendant to promulgate and comply with policies and procedures to ensure that Defendant does not discriminate in the future against Plaintiff;

e.      Order Defendant to train all its employees about its obligations pursuant to federal law and about Defendant's policy and procedures for allowing access for individuals with disabilities and equal treatment for girls and young women;

f.      Award compensatory damages pursuant to Section 504 of the Rehabilitation Act of 1973 and Chapter 121 of the Texas Human Resources Code;

g.      Award reasonable costs and attorneys' fees; and

h.      Award any and all other relief that may be necessary and appropriate.

Respectfully submitted,

/s/ Lia S. Davis
LIA S. DAVIS
Texas State Bar No. 24071411
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
Tel: (512) 454-4816
Fax: (512) 454-3999
ldavis@drtx.org

/s/ Mary C. Vargas
MARY C. VARGAS*
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel: (240)793-3185
Fax: (888) 778-4620
mary.vargas@steinvargas.com

*Motion to Participate *Pro Hac Vice* will be filed after case opening.